# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN SMITH,** | : | **CIVIL ACTION NO. 1:05-CV-1729** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **THE MUNICIPALITY OF** | : | |
| **LYCOMING COUNTY, et al.,** | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Presently before the court is a motion for summary judgment (Doc. 15) filed on behalf of defendants Keenan, Verzella, Schildt, Heilman, Mowatt and Huang. For the reasons that follow, the motion will be granted.

**I.     Statement of Facts**

Plaintiff Steven Smith ("Smith") was committed to the Lycoming County Prison on October 5, 2002, with a history of the following medical conditions: Hepatitis A, B, and C; Herpes Simplex 1 and 2; genital warts; positive test for Tuberculosis; compromised immune system from removal of spleen; and bowel problems resulting from a recent bowel obstruction surgery.  (Doc. 1, p. 20).  Within a month of his arrival, he complained about a number of ailments, but allegedly was ignored.

On December 12, 2002, he was transferred to the State Correctional Institution at Camp Hill, where he remained until February 25, 2003.  Upon his return to Lycoming County Prison, he disagreed with the course of treatment prescribed by the intake physician.  Over the next several months, he was seen in the medical department for a myriad of complaints.  On June 5, 2003, he was transferred to the State Correctional Institution at Camp Hill (Doc. 1, p. 24), where he remained until September 15, 2003, when he was transferred to the State Correctional Institution at Albion.  (Id.).  He was transferred back to the Lycoming County Prison on September 25, 2003.  (Doc. 1, p. 25).

Smith alleges that he was denied adequate medical treatment while incarcerated at the Lycoming County Prison during the following time periods: October 5, 2002, to December 12, 2002; February 25, 2003, to June 5, 2003; and September 25, 2003, to May 11, 2004.  Defendants seek to dismiss the claims arising prior to August 16, 2003, as being barred by the statute of limitations. This issue has been addressed, albeit in the context of a motion to dismiss filed by certain other defendants (see Doc. 16)  and the court has concluded that any claims arising prior to August 16, 2003, are barred by the statute of limitations.  (See Doc. 55; see also "Discussion" *infra*, section "A").  Consequently, from this point forward, the recitation of facts will be limited to the time period of September 25, 2003, through May 11, 2004.

Medical clinics, which are staffed by various local physicians, are held at the Lycoming County Prison twice a week. (Doc. 32-2, p. 29). The physicians do not select which prisoners they treat, "rather, the prison medical staff serves as a triage and creates patient lists based on inmate request slips." (Id.). In addition to the clinics, an "on-call" physician is available twenty-four hours a day, seven days a week, to handle emergencies. (Id.). Each of the defendants, pursuant to an agreement with Lycoming County, provided medical services at the prison, either through the clinic or in an "on-call" capacity, during the relevant time period. (Docs. 32-2, pp. 28, 33, 37, 45, 50).

Defendant Keenan indicates that he was indirectly involved in Smith's treatment on three separate occasions. On October 6, 2003, a nurse informed defendant Keenan of Smith's request for medication and his complaints of skin lesions, headaches and dandruff. (Doc. 32-2, pp. 4, 30). Defendant Keenan directed the nurse to place Smith on the list to be seen the next clinic day. (Doc. 46-3, p. 2). Smith was seen and treated for these complaints on October 10, 2003. (Doc. 32-2, pp. 4, 17, 30). On October 28, 2003, Smith requested treatment for his genital herpes and was informed that he was on the list to see the doctor on October 30, 2003. (Doc. 32-3, p. 22, Doc. 44, p. 35). After discussing Smith's symptoms with a nurse, on October 30, 2003, defendant Keenan concluded that his complaints were valid and he prescribed a medication that is used to treat herpes. (Doc. 32-2, pp. 17, 22, 30). Lastly, on March 1, 2004, defendant Keenan countersigned a prescription for Keflex, which was given to Smith by an outside dermatologist to treat folliculitis.

Defendant Huang treated Smith on February 23, 2004, for complaints of bleeding from his penis, and a skin infection on his head and in his groin area. (Doc. 32-2, pp. 9-11, 24, 50). An examination of the genital area revealed no discharge from his penis or tenderness in the penis, scrotum or testicles. Smith declined to take a urinalysis to rule out renal stones. (Doc. 32-2, pp. 51). Upon examination of the skin areas, defendant surmised that Smith was suffering from folliculitis, a superficial skin infection, but he refused to allow defendant to swab the skin areas to confirm the diagnosis. (Id.). Therefore, defendant Huang referred Smith to a dermatologist for a second opinion. (Doc. 32-2, pp. 18, 24). The following day, prison staff scheduled an appointment with a dermatologist for the following week. Smith returned from the dermatologist with a diagnosis of folliculitis to be treated with Keflex. (Doc. 44, p. 33).

On May 11, 2004, defendant Schildt was the "on-call" physician for the prison. On that date, the prison nurse informed defendant Schildt that Smith was complaining of severe right lateral abdominal pain, soft bloody stool and other physical ailments. (Doc. 32-2, pp. 26, 38-39). The prison nurse was ordered to arrange transportation to the emergency room at The Williamsport Hospital *via* the Lycoming County Sheriff. (Doc. 32-2, pp. 19, 39).

Defendants Verzella, Heilmann, and Mowatt were not involved in Smith's care during the relevant time period. (Doc. 32-2, pp. 34, 42, 46).

**II.    Standard of Review**

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Twp, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

**III.    Discussion**

    **A.    Statute of Limitations**

A two-year statute of limitations applies to civil actions filed pursuant to 42 U.S.C. § 1983. See Wilson v. Garcia, 471 U.S. 261, 276 (1985) (holding claims brought pursuant to § 1983 are subject to the state statute of limitations for personal injury actions); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 n.9 (3d Cir. 1996) (noting two-year Pennsylvania limitations period applicable to § 1983 claims).

A claim under § 1983 accrues when the plaintiff knows, or has reason to know, of the injury on which the claim is based. Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998).

The complaint in this action was not filed until August 16, 2005. Hence, any incidents that occurred prior to August 16, 2003, are barred by the two-year statute of limitations.

Smith seeks to avoid dismissal by arguing that the statute should be tolled. The plaintiff bears the burden of proving that the statute of limitations has been tolled. Van Buskirk v. Carey Canadian Mines, Ltd., 760 F2d 481, 487 (3d Cir. 1985). Plaintiff first argues that, based on Hardin v. Straub, 490 U.S. 536 (1989), his status as an incarcerated person operates to toll the statute. (Doc. 44, p. 6). However, as noted by defendants, the Hardin decision involved a Michigan state statute which permitted tolling for persons under "legal disability." Id. at 537. No such statute exists in Pennsylvania. Hence, there is no merit to this tolling argument.

He next argues that the statute should be tolled because defendants concealed their identities. Fraudulent concealment tolls the statute where "through fraud or concealment the defendant caused the plaintiff to relax his vigilance or deviate from the right of inquiry." Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991). It requires an intentional or unintentional affirmative and independent act of concealment that would prevent a plaintiff from discovering an injury despite the exercise of reasonable diligence. Bohus, 950 F.2d at 926. It must be proved by "clear, precise and convincing evidence." Bohus, 950 F.2d at 925 (citing Molineux v.

Reed, 516 Pa. 398, 403 (1987)). It does not toll the statute where the plaintiff knew or should have known of the claim despite the defendants' misrepresentation. Id. at 925-26. "Where common sense would lead the plaintiff to question a misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation." Mest v. Cabot Corp., 449 F.3d 502, 516 (3d Cir. 2006) (citing Bohus, 950 F.2d at 925).

Smith's argument is based on concealment of defendants' identity, as opposed to concealment of the injury itself. Specifically, he contends that "[t]he physician defendant's [sic] refused to give [him] their name's [sic] or in anyway identify themselves so that [he] could not identify them in a civil rights action or mandamus. Telling [him] that if [he] wanted their identity: subpoena it!" (Doc. 44, p. 6, Doc. 1, p. 10). He also pursued the matter by submitting a request to the warden in 2003. (Doc. 1, p. 10).

Defendants point out that Smith did not attempt to subpoena the information. Nor did he request copies of his medical records, which would have easily identified the physicians who treated him. Further, the record does not disclose any misleading communication between plaintiff and defendants. Smith has therefore failed to meet his burden of proving fraudulent concealment by clear and convincing evidence. Accordingly, the statute of limitations was not tolled based on fraudulent concealment.

Lastly, Smith seeks to toll the statute by arguing that he was subjected to a continuing wrong. The continuing wrong doctrine operates to toll the statute of limitations if the plaintiff is subjected to persistent wrongful conduct. See Brenner

v. Local 514, United Bhd. Of Carpenters and Joiners of America, 927 F.2d 1283, 1296 (3d Cir. 1991); see also 287 Corporate Ctr. Assocs. v. Township of Bridgewater, 101 F.3d 320, 324 (3d Cir. 1996). To determine whether there is a continuing violation, the court considers the subject matter, frequency and degree of permanence of the defendants' conduct. Cowell v. Palmer Twp., 263 F.3d 286, 292-93 (3d Cir. 2001). The "degree of permanence," which should trigger the plaintiff's awareness of and duty to assert his rights, is the most important of the factors. Id. (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). "The continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Id. at 295 (citations omitted).

Smith has failed to meet his burden because he is unable to establish permanence. As noted above, there were intermittent time periods during which he was not incarcerated at the Lycoming County Prison. Significantly, during those time periods, he was incarcerated at various state correctional institutions and, according to Smith, was receiving medical treatment for ailments which he contends defendants failed to treat. (See Doc. 1, pp. 7, 10). The continuing violation doctrine is therefore unavailable to Smith.

Defendants motion will be granted. Any claims based upon conduct that occurred prior to August 16, 2003, are barred by the two-year statute of limitations.

**B.    Personal Involvement**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Each defendant must have been personally involved in the events or occurrences which underlie a claim. See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Allegations of

participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.  Rode, 845 F.2d at 1207-08.

Defendants Verzella, Mowatt and Heilmann, were not personally involved in the alleged wrongs because they did not treat plaintiff during the relevant time period.  Hence, defendants' motion will be granted with respect to these defendants.

### C.     Eighth Amendment

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).  There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir.2002).[1]

---

[1] The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Correctional Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987).

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa) aff'd, 103 F.3d 691 (1996) (citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D.Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. Monmouth County Correctional Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. White v. Napoleon, 897 F.2d 103, 108-10 (1990).

Throughout the relevant time period, defendants Keenan, Schildt and Huang were involved with Smith's medical treatment. Each and every time he was seen, he was evaluated and a course of treatment was prescribed to ease his discomfort. On one occasion, Smith declined to engage in the suggested diagnostic testing. Smith was referred to an outside physician to confirm a diagnosis and, when necessary, was transported to the local hospital. Smith was never denied or refused

treatment. This is clearly a case where an inmate has been given medical attention and is dissatisfied with the results. An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. <u>Durmer</u>, 991 F.2d at 69; 372 F.3d 218, 235 (3d Cir. 2004). Courts will not second guess whether a particular course of treatment is adequate or proper. <u>Parham v. Johnson</u>, 126 F.3d 454, 458 n. 7 (3d Cir. 1997). Under these circumstances and based upon the well-documented course of treatment set forth in the record, the defendants were not deliberately indifferent to Smith's serious medical needs. Consequently, Defendants' motion for summary judgment will be granted.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     August 25, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN SMITH,** | : | **CIVIL ACTION NO. 1:05-CV-1729** |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **THE MUNICIPALITY OF LYCOMING COUNTY, et al.,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 25th day of August, 2006, upon consideration of the motion for summary judgment(Doc. 15) filed on behalf of defendants Keenan, Verzella, Schildt, Heilman, Mowatt and Huang, and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion (Doc. 15) is GRANTED.

2. Entry of judgment is DEFERRED until further order of the court.

3. The Clerk of Court is directed to TERMINATE defendants Keenan, Verzella, Schildt, Heilman, Mowatt and Huang.

                                                                          S/ Christopher C. Conner
                                                                       CHRISTOPHER C. CONNER
                                                                        United States District Judge