IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN SMITH,** | : | **CIVIL ACTION NO. 1:05-CV-1729** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **THE MUNICIPALITY OF** | : | |
| **LYCOMING COUNTY, et al.,** | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Presently before the court are cross-motions for summary judgment filed on behalf of plaintiff Steven Smith ("Smith") (Doc. 74) and defendants Lynch and Poorman (Doc. 76). For the reasons that follow, defendants' motion will be granted and plaintiff's motion will be denied.

**I.    Statement of Facts**

Plaintiff Steven Smith ("Smith") was committed to the Lycoming County Prison on October 5, 2002, with a history of the following medical conditions: Hepatitis A, B, and C; Herpes Simplex 1 and 2; genital warts; positive test for Tuberculosis; compromised immune system from removal of spleen; and bowel problems resulting from a recent bowel obstruction surgery. (Doc. 1, p. 20). Within a month of his arrival, he complained about a number of ailments, but allegedly was ignored.

On December 12, 2002, he was transferred to the State Correctional Institution at Camp Hill, where he remained until February 25, 2003. Upon his return to Lycoming County Prison, he disagreed with the course of treatment prescribed by the intake physician. Over the next several months, he was seen in the medical department for a myriad of complaints. On June 5, 2003, he was transferred to the State Correctional Institution at Camp Hill (Doc. 1, p. 24), where he remained until September 15, 2003, when he was transferred to the State Correctional Institution at Albion ("SCI-Albion"). (Id.). He was transferred back to the Lycoming County Prison on September 24, 2003.[1] (Doc. 32-2, p. 21).

Smith alleges that he was denied adequate medical treatment while incarcerated at the Lycoming County Prison during the following time periods: October 5, 2002, to December 12, 2002; February 25, 2003, to June 5, 2003; and September 25, 2003, to May 11, 2004. The court has previously concluded that any claims arising prior to August 16, 2003, are barred by the statute of limitations. (See Doc. 55). Consequently, the statement of facts is limited to the time period of September 24, 2003, through May 11, 2004.

On September 24, 2003, Smith returned to Lycoming County Prison from SCI-Albion. He arrived with a September 19, 2003 prescription for a seven-day regimen of Keflex, *inter alia*. (Doc. 32-2, p. 17). According to the "Transfer Health

---

[1] Although Smith represents that he returned to Lycoming County Prison on September 25, 2003, the medical progress notes (Doc. 32-2, p. 21) and the transfer health information sheet reveal that he was recommitted on September 24, 2003.

Information" received from SCI-Albion, the Keflex was to be discontinued on September 26, 2003. (Id.; Doc. 60-2, p. 1). Defendant Lynch noted this fact in the Physician's Orders, and the notation was signed by a physician. (Doc. 32-2, p. 17). The medication was stopped on September 26, 2003. Smith concedes that the prescription was written on September 19, 2003, but argues that because he did not begin taking the prescription until several days later, stopping the medication on September 26, 2003, was premature. In support of his argument, Smith submits a "Medication Administration Record" that indicates that the medication was not started until September 22, 2003. (Doc. 90, p. 2).

Medical clinics, which are staffed by various local physicians, are held at the Lycoming County Prison twice a week. (Doc. 32-2, p. 29). The physicians do not select which prisoners they treat, "rather, the prison medical staff serves as a triage and creates patient lists based on inmate request slips." (Id.) During the relevant time period, each time Smith submitted an inmate request for treatment, he was placed on the clinic list and treated on the next clinic day. (Id. at pp. 4-6, 8-9, 12-15, 17-19, 21-26). There were also numerous occasions on which Smith was seen without having submitted an inmate request. (Id. at pp. 18, 22-25). In addition to the clinics, an "on-call" physician is available twenty-four hours a day, seven days a week, to handle emergencies. (Id.)

Smith's medical records reveal the following treatment. On October 6, 2003, Smith submitted a sick call request stating that he would like to resume taking the Keflex and complaining of skin lesions, headaches and dandruff. (Doc. 32-2, pp. 4,

30). A physician reviewed the request and noted that Smith had a history of frequent demands for inappropriate antibiotic use. (Doc. 32-2, p. 21). Nonetheless, he was placed on the list for the next clinic day, which was October 10, 2003. At that time, he complained that bumps on his scalp were returning because he was not on Keflex and "Acyclovir." He indicated to the examining physician that he needed antibiotics periodically to "stay healthy." (Id.) The examination revealed no sores or open areas on the scalp, but, due to "minimal flaking," he was prescribed dandruff shampoo. (Id.) The physician concluded that administration of antibiotics was not clinically necessary.

On October 28, 2003, Smith requested treatment for his genital herpes and was informed that he was on the list to see the doctor on October 30, 2003. (Doc. 32-3, p. 22, Doc. 44, p. 35). After discussing Smith's symptoms with a nurse, on October 30, 2003, a physician concluded that his complaints were valid and he prescribed Acyclovir, a medication that is used to treat herpes. (Doc. 32-2, pp. 17, 22, 30).

In early 2004, Smith was seen on numerous occasions in the medical department for genital warts, a skin rash, and complaints that his liver was "acting up" and his immune system was down. (Doc. 32-2, pp. 22-23). He was examined and treated, blood work was ordered, and he was referred to the liver clinic.

On February 23, 2004, he had complaints of bleeding from his penis, and a skin infection on his head and in his groin area. (Doc. 32-2, pp. 9-11, 24, 50). An examination of the genital area revealed no discharge from his penis or tenderness

in the penis, scrotum or testicles. Smith declined to take a urinalysis to rule out renal stones. (Doc. 32-2, pp. 51). Upon examination of the skin areas, the examining physician surmised that Smith was suffering from folliculitis, a superficial skin infection, but he refused to allow the doctor to swab the skin areas to confirm the diagnosis. (Id.). Therefore, Smith was referred to a dermatologist for a second opinion. (Doc. 32-2, pp. 18, 24). The following day, prison staff scheduled an appointment with a dermatologist for the following week. Smith returned from the dermatologist with a diagnosis of folliculitis to be treated with Keflex. (Doc. 44, p. 33).

In March 2004, he complained of an outbreak of genital herpes and was provided with Acyclovir. The following month, pursuant to his request (Doc. 32-2, p. 14), he was scheduled to see the doctor. He chose to go to the gym instead. (Id. at p. 26).

In early May 2004, he requested that the Keflex be discontinued. (Doc. 32-2, p. 15). The examining physician declined the request because he felt that it was in Smith's best interest to continue on the medication. He gave Smith the option to refuse the Keflex if he felt it was appropriate. On May 11, 2004, the prison nurse informed the "on-call" physician that Smith was complaining of severe right lateral abdominal pain, soft bloody stool and other physical ailments. (Id. at pp. 26, 38-39). The prison nurse was ordered to arrange transportation to the emergency room at The Williamsport Hospital *via* the Lycoming County Sheriff. (Id. at pp. 19, 39). Based on May 12, 2004 notations made in the physician's orders, it appears that he

returned to the prison either on the same day he was transported out to the emergency room or the following day.  (Id. at p. 19).

## II.    Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim.  FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Twp, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004).  "Such affirmative evidence-- regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).  Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P.  56(c), (e).

## III.    Discussion

### A.    Harassment

In order to prevail on a § 1983 claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege, or immunity

secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000); Schiazza v. Zoning Hearing Bd., 168 F. Supp.2d 361, 372 (M.D. Pa. 2001).

It is well-settled that verbal harassment does not amount to a constitutional violation. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973) (overruled on other grounds); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ( "Mean harassment . . . is insufficient to state a constitutional deprivation." ); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ( "verbal harassment does not give rise to a constitutional violation enforceable under § 1983" ); Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D.Pa.) ("Verbal abuse is not a civil rights violation. . . ." ), aff'd , 800 F.2d 1130 (3d Cir. 1986) (Table); Carter v. Cuyler, 415 F. Supp. 852, 856 (D.C. Pa. 1976). Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (concerning a guard who put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).

Smith contends that during the relevant time period defendants harassed him by commenting on the thickness of his medical file and questioning the validity of his medical conditions. (Doc. 1-6, p. 13, ¶¶ 68, 69, 73, 95). Such claims are a far cry from a cognizable harassment claim involving physical threats or egregious acts

designed to reenforce the harassment. Clearly, defendants are entitled to an entry of summary judgment on the harassment claims.

      B.      <u>Denial of Medical Treatment</u>

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>see</u> <u>also</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002).[2]

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'"

---

[2]The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004) (quoting <u>White v. Napoleon</u>, 897 F.2d 103, 109 (1990); <u>Monmouth County Correctional Inst. Inmates v. Lensario</u>, 834 F.2d 326, 346 (3d Cir. 1987).

Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D.Pa) aff'd, 103 F.3d 691 (1996) (citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754,762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D.Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. Monmouth County Correctional Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. White v. Napoleon, 897 F.2d 103, 108- 10 (1990).

Smith avers that defendant Lynch was deliberately indifferent to his serious medical needs when she prematurely stopped his Keflex. Smith arrived from SCI-Albion with a prescription for Keflex that, according to the transfer health information sheet, expired on September 26, 2003. (Doc. 60-2, p. 1). Therefore, during the intake evaluation, defendant Lynch noted in the progress notes that the Keflex prescription was to be discontinued as of September 26, 2003. (Doc. 60-1, p. 1). Smith argues that the prescription was started several days late and, therefore, would not expire until several days after September 26, 2003. Lending support to this argument is the medication administration record that indicates that the prescription was first administered at SCI-Albion on September 22, 2003, not

9

September 19, 2003. However, even if this document, which is at odds with the transfer health information sheet, is accurate, and it can be concluded that the Keflex was stopped prematurely, this does not translate into a finding of deliberate indifference. Within a couple weeks of his arrival at the prison, Smith requested to see a physician to address the need to resume taking the Keflex. Following an examination, the treating physician concluded that a prescription for Keflex, or any other antibiotic, was not clinically warranted at that time. Thus, even if the Keflex was stopped three days prematurely, the record does not support a finding that the denial of Keflex was a sufficiently serious deprivation. Another obstacle with regard to this claim is Lynch's culpability. It is clear that Lynch was relying on the health transfer information sheet in evaluating Smith's prescriptions. There is no indication that Lynch had access to the medication administration record, which, the court assumes, was generated by the SCI-Albion medical department. Consequently, there is nothing in the record that demonstrates that Lynch acted with "a sufficiently culpable state of mind."

Likewise, Smith's contention that defendants engaged in a pattern of denial of treatment in that they ignored sick call requests, both verbal and written, denied him access to a physician, and compromised his treatment by proclaiming that there was nothing wrong with him, has no support in the record. Contrary to his allegations, the inmate requests that were submitted, whether addressed to a doctor or nurse, were followed up with a scheduled visit to the clinic. Throughout the relevant time frame, he was seen on multiple occasions by nurses and physicians

and received adequate treatment each time he presented to the clinic, whether or not the visit was preceded by an inmate request for medical care. There is no evidence of record that supports Smith's claim that his requests for treatment were ignored by the nurses.

Nor is there any evidence that the nurses denied him access to physicians. In considering the physicians' motion for summary judgment, the court, having thoroughly reviewed the medical records, concluded the following:

> Throughout the relevant time period, defendants Keenan, Schildt and Huang were involved with Smith's medical treatment. Each and every time he was seen, he was evaluated and a course of treatment was prescribed to ease his discomfort. On one occasion, Smith declined to engage in the suggested diagnostic testing. Smith was referred to an outside physician to confirm a diagnosis and, when necessary, was transported to the local hospital. Smith was never denied or refused treatment. This is clearly a case where an inmate has been given medical attention and is dissatisfied with the results. An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. Durmer, 991 F.2d at 69; 372 F.3d 218, 235 (3d Cir. 2004). Courts will not second guess whether a particular course of treatment is adequate or proper. Parham v. Johnson, 126 F.3d 454, 458 n. 7 (3d Cir. 1997). Under these circumstances and based upon the well-documented course of treatment set forth in the record, the defendants were not deliberately indifferent to Smith's serious medical needs.

(Doc. 62, pp. 11-12). All indications are that Smith was rendered timely and consistent treatment by the prison physicians.

### IV.     **Conclusion**

Based on the foregoing, defendants' motion for summary judgment will be granted and plaintiff's motion will be denied.

An appropriate order will issue.

      S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge

Dated:     August 24, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVEN SMITH,** : | **CIVIL ACTION NO. 1:05-CV-1729** |
| : | |
| **Plaintiff** : | **(Judge Conner)** |
| : | |
| v. : | |
| : | |
| **THE MUNICIPALITY OF** : | |
| **LYCOMING COUNTY, et al.,** : | |
| : | |
| **Defendants** : | |

## ORDER

AND NOW, this 24th day of August, 2007, upon consideration of the cross-motions for summary judgment (Doc. 74, 76), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 76) is GRANTED.

2. Plaintiff's motion for summary judgment (Doc. 74) is DENIED.

3. The Clerk of Court is directed to ENTER judgment in favor of defendants Lynch and Poorman and against plaintiff.

4. The Clerk of Court is further directed to ENTER judgment on behalf of defendants Keenan, Verzella, Schildt, Heilman, Mowatt and Huang, as the entry of judgment in favor of these defendants was deferred by prior order of court. (Doc. 62).

5. The Clerk of Court is further directed to CLOSE this case.

                                             S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge